IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **EUGENE MILLER, JR**., Individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>**LENDING TREE, LLC,** a North Carolina Limited Liability Corporation,<br>Defendant. | No. 1:08-cv-2300<br><br>Honorable Judge James B. Zagel |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND 12(B)(3)**

**I. PRELIMINARY STATEMENT**

Defendant LendingTree, LLC ("**LendingTree**") is an online service, allowing potential mortgage borrowers to obtain multiple quotes from interested lenders. LendingTree does not charge consumers any fee for these services. Plaintiff Eugene Miller, Jr. ("**Miller**") chose to take advantage of LendingTree's free service. As consideration for use of LendingTree's service, Miller agreed to submit any dispute he might have with LendingTree to binding, individual (non-class) arbitration. Miller also agreed that in the event he did file any lawsuit against LendingTree, it would be venued in Mecklenburg County, North Carolina.

In direct violation of Miller's agreements, he has now brought this current action before this Court. This lawsuit has no merit. Miller seeks to penalize LendingTree for being the victim of criminal acts of data theft. On the face of his own Complaint, it is clear that Miller has suffered no cognizable injury whatsoever. But the first threshold issue for this Court to decide is whether Miller's prior agreements block this suit in this venue altogether.

Miller filed a lawsuit, ignoring his contractual duty to seek arbitration, in which he demands national class treatment for his dispute, despite his binding agreement to arbitrate all disputes with LendingTree only on an individual basis. Miller venued this lawsuit in Illinois, disregarding his clear contractual duty to bring all disputes to Mecklenburg County, North Carolina. LendingTree requested, through counsel, that Miller honor the terms of the agreement by which he obtained the benefit of LendingTree's services. Miller refused. Therefore, in accordance with the plain text of the parties' agreement, the statutory authority of the Federal Arbitration Act, and well-settled precedent, LendingTree brings this Motion to dismiss the present suit and compel the parties to arbitration.

The agreement between Miller and LendingTree provides that if disputes are not compelled to arbitration, they must be brought in state or federal court in Mecklenburg County, North Carolina. Therefore, in the alternative, LendingTree moves to dismiss this action for improper venue.[1] Miller enjoyed the benefits of LendingTree's free service and is legally obliged to meet the commitments he made as a condition of using that service.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. LENDINGTREE'S WEBSITE AND FREE ONLINE SERVICES ARE GOVERNED BY A TERMS OF USE AGREEMENT

Every person who uses the LendingTree website agrees to a Terms of Use Agreement ("**TOU**" or the "**Terms of Use**"). Miller submitted a mortgage application to LendingTree via LendingTree's website on July 25, 2007. Compl. at ¶7. Attached as Ex. A is a true and correct copy of the Affidavit of LendingTree's Senior Director, Product Development and Technology,

---

[1] As discussed below, LendingTree would consent to the transfer of this action via 28 U.S.C.A. §1404(a) to the Western District of North Carolina *in lieu* of dismissal under Rule 12(b)(3).

Donald Norton, which provides as its Attachment 1 a copy of the TOU as constituted on July 25, 2007. The very first paragraph of the TOU, all in bold, tells the consumer:

> **This Agreement contains an agreement to arbitrate all claims and contains disclaimers of warranties and liability. These provisions form an essential basis of our bargain.**
>
> **If you do not agree to these terms and conditions, do not access this Web site.**

(Ex. A, Attachment 1.) The scope of the arbitration agreement is very broad, encompassing "[a]ny claim or controversy arising out of or relating to the use of this Web site" and "any acts or omissions for which you may contend LendingTree is liable." Id. Per the TOU, all such disputes "shall be finally, and exclusively, settled by arbitration" before the American Arbitration Association ("AAA") under the commercial arbitration rules of the AAA in effect at that time. Id.

The TOU makes very clear that the envisioned arbitration will resolve individual disputes, and that no class arbitration will be allowed.

> **THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND LENDINGTREE WILL BE RESOLVED BY <u>BINDING ARBITRATION</u>. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS.**

(All emphasis as in original).

In addition to this binding arbitration clause and its class action waiver, the TOU includes a choice of forum provisions.

> **Should a Dispute arise and should the arbitration provisions herein become inapplicable or unenforceable, or in any instance of any lawsuit between you and LendingTree, the parties agree that jurisdiction over and venue of any suit shall be exclusively in the state and federal courts sitting in Mecklenburg County, North Carolina. If either party employs attorneys to enforce any right in connection with any Dispute or lawsuit, the prevailing party shall be entitled to recover reasonable attorneys' fees.**

The TOU also includes a choice of law provision, selecting the law of North Carolina as controlling. In keeping with this provision, all state law analysis in this Motion draws from the law of North Carolina.

> This Agreement shall be subject to and construed in accordance with the laws of the State of North Carolina, excluding its conflict of laws principles.

Id. Any consumer who uses LendingTree's website agrees to these TOU. Moreover, if the website user goes on to submit an application, as did Miller, he must actively agree to the TOU. As an unavoidable part of the application process, the applicant must hit a large red button that says "SAVE AND CONTINUE" indicating that he "agree[s] and accept[s]" the Terms of Use Agreement (which is linked to again) and "could or did print all these documents for [his] records." Ex. A, Attachment 2. The applicant cannot continue in this process without clicking on the button. Ex. A. Therefore, to obtain free services from LendingTree, Miller agreed to these Terms of Use.

### B. IN VIOLATION OF THE AGREED-TO TERMS OF USE, MILLER HAS SUED LENDINGTREE IN A PUTATIVE CLASS ACTION IN ILLINOIS

In violation of the Terms of Use, on April 22, 2008, Miller sued LendingTree before this Court in a putative class action. Miller brought the present suit, nominally on behalf of all "persons throughout the United States whose consumer credit reports, personal information, and financial information were intentionally and illegally distributed by a representatives [*sic*] and/or agents of the Defendant[.]" Compl. at ¶1. Miller alleges that "to facilitate consumer's mortgage and/or loan application," LendingTree obtains a consumer's most confidential information, including name, social security number, employment information, and phone number, etc." Id., ¶7. Miller further contends this information was "improperly and illegally sold and/or disclosed to a third party by an agent and/or agents of" LendingTree. Id., ¶13. As issues of law and fact

- 4 -
Case 3:08-cv-02077-FDW    Document 18    Filed 06/23/2008    Page 4 of 18

supposedly common to the class, Miller cites, *inter alia*, "whether Defendants took reasonable steps and measures to safeguard the personal and financial information of its clients[.]" Id., ¶20(a). Plaintiff alleges five causes of action, each predicated on an asserted duty owed by LendingTree to the applicant and on a perceived defect in LendingTree's conduct with respect to applicant information. Plaintiff does not allege that any criminal *has* attempted to impersonate Miller for any purpose. Miller merely alleges that LendingTree's handling of his account information made such hypothetical criminal attack more likely and seeks to prosecute LendingTree for alleged statutory violations of the Fair Credit Reporting Act.

LendingTree notes that the Miller action is one of six putative national class actions which followed the announcement by LendingTree that it had been the victim of data theft.[2] (Copies of these Complaints are attached as Ex. B). Plaintiff's counsel in two of these cases has moved before the Judicial Panel for Multidistrict Litigation for consolidation of all cases for the purposes of pre-trial administration in the Western District of North Carolina. Ex. C. Plaintiff's counsel in another case, Mitchell, promptly moved to transfer venue from the Western District of Oklahoma to the Western District of North Carolina when shown the TOU. Ex. D. The Plaintiff's pending venue Motion in Mitchell, attached, cited to and relied upon the TOU as the governing agreement between the parties.

LendingTree, through counsel, requested that Miller honor the terms of the agreement by which he used LendingTree's service, dismiss this suit, and, should he deem it necessary, submit

---

[2] Bercaw v. LendingTree LLC, No. 8:08-cv-660 (C.D.Cal.)(brought, in part, by Plaintiff's counsel in Miller, Larry Drury); Carson v. LendingTree LLC, No. 3:08-cv-247 (W.D.N.C.); Garcia v. Lending Tree LLC, No. 3:08-cv-4551 (S.D.N.Y); Miller v. Lending Tree LLC, No. 1:08-cv-2300 (N.D. Ill.); Mitchell v. Home Loan Center and The Lending Tree, No. 5:08-cv-448 (W.D.Okla.); and Spinozzi v. LendingTree LLC, No. 3:08-cv-229 (W.D.N.C.).

his claims to binding, individual (non-class) arbitration. Ex. E, Demand Letter. Miller refused to do so. Ex. F, Drury Letter.

### III. THIS ACTION MUST BE DISMISSED IN LIGHT OF PLAINTIFF'S CONTRACTUAL DUTY TO SUBMIT ALL DISPUTES WITH LENDINGTREE TO ARBITRATION

#### A. LENDINGTREE'S MOTION TO COMPEL ARBITRATION MUST BE ANALYZED UNDER THE FEDERAL ARBITRATION ACT

*1. The FAA Creates a Body of Substantive Federal Law on Arbitrability*

The Federal Arbitration Act, 9 U.S.C.A. § 1 et seq., establishes a "national policy favoring arbitration." Southland Financial Services, Inc. v. Keating, 465 U.S. 1, 10 (1984). The FAA entails "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect…is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." See Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1993).

Section 2 of the FAA provides in pertinent part:

> A written provision of . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be ***valid, irrevocable, and enforceable***, save upon such grounds as exists at law or in equity for the revocation of any contract.

(Emphasis added). In enacting Section 2, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp., 465 U.S. 1, 10 (1984). The United States Supreme Court has recognized that Congress enacted the FAA for the benefit of businesses and consumers alike. Allied-Bruce Terminix Companies, Inc., 513 U.S. 265, 280 (1995). "Congress has thus mandated the enforcement of arbitration agreements." Southland Corp., 465 U.S. at 10; U.S. 1, 24 (1983).

**B. PLAINTIFF'S CLAIMS MUST BE ARBITRATED BECAUSE HE SIGNED A CONTRACT WHICH INCORPORATED A VALID ARBITRATION AGREEMENT AND HIS CLAIMS FALL WITHIN THE COMPREHENSIVE SCOPE OF THAT AGREEMENT.**

When deciding whether a matter must be submitted to arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the specific dispute falls within the substantive scope of that agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985). If the court concludes that there is a valid agreement to arbitrate and the matter falls within the scope of the arbitration clause, it must refer the case to arbitration without reviewing the merits.

The burden of establishing that the claims at issue are unsuitable for arbitration falls on Plaintiff as the party opposed to arbitration. Green Tree Financial Corp. - Alabama v. Randolph, 531 U.S. 79, 91 (2000). The burden is not met by "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Id. at 89-90.

Under the United States Supreme Court's two-pronged analysis set forth in Mitsubishi Motors Corp., Miller must be compelled to arbitrate. First, Miller manifested his consent to the TOU as part of and in consideration for obtaining the free use of LendingTree's online services. The TOU calls for all disputes arising from the use of those services to be submitted to binding, individual (non-class) arbitration.

Second, Plaintiff's challenge to LendingTree's handling of his account information clearly constitutes a claim that falls within the broad scope of the TOU's arbitration provision. The TOU applies to "[a]ny claim or controversy arising out of or relating to the use of this Web site" and, independently, to "any acts or omissions for which you may contend LendingTree is liable." Ex. A, Attachment 1. Plaintiff says that in submitting an application on LendingTree's Web site, LendingTree required him to provide certain personal information, and that in

maintaining the information submitted on the Web site, LendingTree did an inadequate job. Miller's Complaint contains nothing *but* allegations of acts and omissions for which Miller asks that LendingTree be held liable. The arbitration provision covers these complaints and contains no exception for security- or data-related concerns. The present action falls squarely within the range of those disputes intended, by the parties' prior written agreement, to be resolved through arbitration.

### C. THE FAA REQUIRES ARBITRATION EVEN WHERE A PLAINTIFF'S CLAIMS ARISE UNDER A CONSUMER PROTECTION STATUTE

Miller raises a number of claims under laws designed for the protection of the consumer. Under the FAA, an arbitration agreement cannot be held invalid merely because the plaintiff's claim arises under a consumer protection statute. The United States Supreme Court in <u>Green Tree Financial</u> held that "even claims arising under a statute designed to further important social polices may be arbitrated[.]" 531 U.S. at 89. In <u>Green Tree Financial</u>, the Court noted, followed, and affirmed a long line of United States Supreme Court precedents in which statutory claims have been compelled into arbitration. <u>See</u>, <u>e.g</u>., <u>Rodriguez de Quijas v. Shearson/American Express, Inc</u>., 490 U.S. 477 (1989) (Securities Act of 1933); <u>Shearson/American Express Inc. v. McMahon</u>, 482 U.S. 220 (1987) (Securities Exchange Act of 1934 and RICO); <u>Mitsubishi Motors Corp</u>., <u>supra</u>, 473 U.S. at 614 (Sherman Act). Each of the statutes in question provides significant protection for consumers, but never in enacting those important statutes did "Congress … evince[] an intention to preclude a waiver of judicial remedies for the statutory rights at issue." <u>Green Tree Financial</u>, 531 U.S. at 90. Claims brought under these statutes can be vindicated in arbitration and present no conflict with the FAA.

As determined by the United States Supreme Court, even consumer class action allegations of criminal fraud and criminal usury may be vindicated in arbitration. <u>Buckeye

Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). In Buckeye Check Cashing, plaintiff alleged that the very contract containing the disputed arbitration clause was void for illegality in that the contract "violated various Florida lending and consumer-protection laws, rendering it criminal on its face." Id. at 1207. More specifically, plaintiff charged that defendants, through the contract at issue, violated Florida's Lending Practices Act, Consumer Finance Act, Deceptive and Unfair Trade Practices Act, and Civil Remedies for Criminal Practices Act. See Plaintiffs-Respondents' Brief in Opposition to Certiorari, 2005 WL 1285615 at *5 (attached here as Ex. G). The Supreme Court, citing extensively to the Federal Arbitration Act, nevertheless compelled arbitration of all these claims.

Likewise, Miller's claims can be effectively vindicated in arbitration, whether they sound in federal or state law, common law, or statute.

### D. THE FAA REQUIRES ARBITRATION EVEN WHERE THE CLAUSE IN QUESTION WILL MANDATE THAT PLAINTIFF PROCEED AS AN INDIVIDUAL AND NOT AS A CLASS REPRESENTATIVE

That Miller casts his claims as a putative consumer class action does not help him evade the arbitration provision. This Court already rejected the proposition that class action waivers render arbitration agreements unconscionable. Zawikowski v. Beneficial Nat. Bank, 1999 WL 35304 at *2 (N.D.Ill.)(Zagel, J.). As the Court noted, "Nothing prevents the Plaintiffs from contracting away their right to a class action." Id., citing to Champ v. Siegel Trading Co., Inc., 55 F.3d 269, 276 (7th Cir. 1995) (enforcing an arbitration provision found to preclude class actions because the provision did not expressly provide for them).

The Seventh Circuit has upheld class action waivers in the arbitration context. See, e.g., Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003) (noting that where consumer form contract prohibits class action arbitration, the court is "obliged to enforce the type of arbitration to which these parties agreed"). The Third Circuit explained in Johnson v. West

Suburban Bank why it compelled non-class arbitration of claims under the federal Truth-in-Lending Act ("TILA") and Electronic Fund Transfer Act ("EFTA"):

> While it may be true that the benefits of proceeding as a class are unavailable in arbitration, neither statute confers upon plaintiffs the right to proceed as a class. Instead, the right is merely a procedural one, arising under Fed.R.Civ.P. 23, that may be waived by agreeing to an arbitration clause. In sum, because we can discern no congressional intent to preclude the enforcement of arbitration clauses in either statute's text, legislative history, or purpose, we hold that such clauses are effective even though they may render class actions to pursue statutory claims under the TILA or the EFTA unavailable.

225 F.3d 366, 369 (3d Cir. 2000). Likewise, there is nothing in the Fair Credit Reporting Act, much less in the common law, that would suggest the ability to proceed in a class format is a substantive right, rather than a matter of mere procedure. Miller can vindicate his interests fully in individual arbitration, and should not be allowed to press his claims anywhere else.

### E. NORTH CAROLINA LAW FAVORS ENFORCEMENT OF ARBITRATION AGREEMENTS

Having no viable argument under federal law to evade the binding arbitration provision and class action waiver, Miller may argue that the TOU is somehow unconscionable as a matter of state law. As noted above, the state law selected by the parties was that of North Carolina. Ex. A, ¶15. Under North Carolina law, the Terms of Use are enforceable, and this Motion must be granted.

North Carolina's practice of enforcing contracts as written applies equally to consumer contracts with arbitration clauses. North Carolina contract law does not allow parties to pick and choose which provisions they would like to honor. "Where the language of a contract is plain and unambiguous, construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions[.]" Burrell v. Sparkkles Reconstruction Co., 657 S.E.2d 712, 716 (N.C. App. 2008). "When competent parties contract at arms length upon a lawful subject, as to

them the contract is the law of their case." Suits v. Old Equity Life Ins. Co., 249 N.C. 383, 386, 106 S.E.2d 579 (1959).

By agreeing to the TOU, including the class action waiver and arbitration clause, Miller obtained the benefit of LendingTree's free services. Miller cannot accrue those benefits and then shrug off the correlative obligations. See, e.g., Pure Oil Co. of the Carolinas v. Baars, 224 N.C. 612, 31 S.E.2d 854 (1944). In Pure Oil Company, the defendants acquired a house by means of a deed of trust. The deed of trust vested in a third party a later option to purchase the house. Defendants objected that the option provision should be deemed in violation of the rule against perpetuities and stricken from the deed. The trial court held, and the North Carolina Supreme Court affirmed, that the deed and option were all part of one transaction and that the defendants could not keep the deed yet strike the option. See id.

LendingTree's TOU tells all users in the first paragraph that:

> **This Agreement contains an agreement to arbitrate all claims and contains disclaimers of warranties and liability. These provisions form an essential basis of our bargain.**

Ex. A. In the case at bar, Plaintiff cannot forsake the agreement to arbitrate, having already received the benefit of LendingTree's services. The agreement to arbitrate is "an essential basis of our bargain," as Plaintiff was told from the outset. It "offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction," such as LendingTree's free services, "and at the same time deny its terms or qualifications," such as the requirement for individual, non-class, binding arbitration. Thompson v. Soles, 299 N.C. 484, 487, 263 S.E.2d 599 (1980).

This hardly would be the first time that a party to a contract under North Carolina law calling for arbitration tried to avoid that obligation by asserting that the arbitration clause is

unconscionable. Arbitration agreements have been enforced by the courts over a wide range of objections. Miller v. Two State Constr. Co., 118 N.C. App. 412, 455 S.E.2d 678 (1995) (enforcing arbitration)(finding arbitration agreement was not unconscionable merely because it entailed a waiver of jury rights); Rodgers Bldrs., Inc. v. McQueen, 76 N.C. App. 16, 331 S.E.2d 726 (1985)(finding arbitration agreement was not unconscionable merely because it encompasses claims of alleged tortious conduct and/or deceptive and unfair practices), cert. denied, 315 N.C. 590, 341 S.E.2d 29 (1986); Raper v. Oliver House, LLC, 180 N.C. App. 414, 421, 637 S.E.2d 551 (N.C. App. 2006)(reversing a trial court ruling that the arbitration clause, in a nursing home admission agreement, was unconscionable, despite issues concerning senior care being matter of public interest).

No one compelled Plaintiff to obtain mortgage quotes. No one compelled Plaintiff to use a free online service like LendingTree's to help with this process. Certainly, no one compelled Plaintiff to use LendingTree's free site as opposed to the sites of LendingTree's many competitors. Plaintiff had a series of meaningful choices; he chose to use LendingTree's free service, in the process agreeing to non-class arbitration; Plaintiff must be bound by that choice. See, e.g., Revels v. Miss North Carolina Pageant Organization, Inc., 176 N.C. App. 730, 735, 627 S.E.2d 280 (2006). In Revels, a beauty contestant had signed an entry form that bound her to arbitrate any disputes she has with the pageant. The plaintiff still brought a suit in federal court. The pageant moved to compel arbitration, arguing "that the arbitration clause was unenforceable where the inequality of bargaining power deprived her of a meaningful choice." Id. The North Carolina Court of Appeals rejected this argument. "Where Revels could enter other pageants or choose to not enter a pageant at all, we find that this contention lacks merit." Id. Like Revels, Plaintiff must be held to the consequences of his freely-chosen bargain.

In seeking to evade his contractual obligations, Plaintiff may cite to Tillman v. Commercial Credit Loans, Inc. 362 N.C. 93 (2008). Tillman is the first and only case by a North Carolina appellate court to hold any contract unconscionable. Id. at 111-12 (Newby, J., in dissent)("For the first time in our history, a North Carolina appellate court has found a contract to be unconscionable"). In Tillman, a sharply divided North Carolina Supreme Court found that an arbitration clause in a particular consumer form contract was both procedurally and substantively unconscionable, and therefore could not be enforced. Tillman does not support Miller's opposition to the enforcement of the TOU.

First, as the majority in Tillman noted, "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Id. at 102. (emphasis added). Here, the TOU is neither procedurally nor substantively unconscionable. The main procedural unconscionability in Tillman was described as follows: "[Mrs.] Tillman and [Mrs.] Richardson were rushed through the loan closings, and the Commercial Credit loan officer indicated where [Mrs.] Tillman and [Mrs.] Richardson were to sign or initial the loan documents. There was no mention of credit insurance or the arbitration clause at the loan closings." Id. at 103. Here, the situation as to the LendingTree TOU was wholly different. Miller was not being "rushed through" anything in submitting an application to LendingTree but was taking just the first tentative step in window-shopping for a new mortgage loan. Miller had all the time in the world to print and read the TOU, or, since they were provided in electronic format, Miller could even enlarge the TOU's font size or search for important key terms. Additionally, the arbitration provision was not hidden in the Terms of Use but was highlighted by the first paragraph of the agreement. There is simply no procedural unconscionability in the LendingTree scenario.

Likewise, the TOU is not substantively unconscionable. The first stage of the Tillman analysis puts the burden on Plaintiff to show that he, financially, cannot afford to press his claims in arbitration. The second stage of Tillman's substantive unconscionability analysis looks to the expenses a consumer may have to bear in proceeding in arbitration. While both the Tillman and LendingTree arbitration clauses incorporate by reference AAA rules, the Tillman agreement negated those rules by saying that AAA rules would not apply in the event of a conflict with the original contract language. The LendingTree agreement does precisely the opposite by fully embracing the AAA rules. Under AAA's Supplementary Procedures for Consumer-Related Disputes[3] the consumer's responsibility for arbitrator fees is capped at a low amount: at $125 for claims under $10,000, and at $375 for claims under $75,000. (This is less than, or comparable to, the $350 civil filing fee charged by Article III courts to every civil litigant.) These rules are part of the LendingTree agreement by direct operation of the text. A proper reading of Tillman, limited to the facts actually before that deeply divided Court, will not aid Miller in eluding his contractual agreements and thwarting federal and North Carolina public policy in favor of arbitration.

Tillman is best understood as a narrow opinion addressing a specific set of facts before the Court. Reading Tillman this way avoids conflict with and preemption by the FAA. As the dissent in Tillman properly noted:

> Although the majority ostensibly applies general principles of state contract law to render this arbitration agreement unconscionable, in effect the majority finds it unconscionable precisely because it is an agreement to arbitrate. By holding that the collective effect of provisions unique to arbitration agreements renders the instant agreement unconscionable, the majority treats this contract differently from other contracts. Such an approach is precluded by federal law.

---

[3] See, Consumer-Related Disputes Supplementary Procedures, http://www.adr.org/sp.asp?id=22014 (effective September 15, 2005) (last viewed June 16, 2008) (attached here as Ex. H).

Tillman, supra, 362 N.C. at 112.

Tillman must be read narrowly, to avoid conflict between federal and North Carolina law. Such conflicts have arisen before in North Carolina, resulting in a finding that state laws that impede arbitration are preempted by the FAA. See, e.g., Aspen Spa Properties, LLC v. International Design Concepts, LLC, 527 F.Supp.2d 469 (E.D.N.C. 2007)(finding FAA preemption of North Carolina's statute forbidding out-of-state arbitrations). However, a finding of preemption is a last resort, and if Tillman can be read so as to coexist with the FAA, that is the appropriate reading.

### IV. THIS ACTION MUST BE DISMISSED IN LIGHT OF PLAINTIFF'S CONTRACTUAL DUTY TO VENUE ALL LITIGATION IN MECKLENBURG COUNTY, NORTH CAROLINA

If this action is not compelled to individual (non-class) arbitration, it must be dismissed for improper venue. The TOU requires that:

> Should a Dispute arise and should the arbitration provisions herein become inapplicable or unenforceable, or in any instance of any lawsuit between you and LendingTree, the parties agree that jurisdiction over and venue of any suit shall be exclusively in the state and federal courts sitting in Mecklenburg County, North Carolina.

Such forum selection clauses are enforceable, even if not individually negotiated. See, e.g., Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991)(enforcing forum selection clause in consumer form contract). As the United States Supreme Court noted:

> a clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

Id. at 593. The Carnival Cruise Lines decision suggests that a forum selection clause must be enforced unless it is fundamentally unfair, i.e., unless there is some evidence that the clause was adopted as a means to discourage consumers from pursuing legitimate claims. As in Carnival Cruise Lines, the fact that the forum selected is the principal place of business for LendingTree belies any suggestion of bad faith motive. Id. at 595.

The Courts of the Seventh Circuit routinely dismiss cases which are filed in derogation of forum selection clauses. See, e.g., Abbott Laboratories v. Takeda Pharmaceutical Co. Ltd., 476 F.3d 421 (7th Cir. 2007) (affirming the dismissal of action for improper venue; commercial contract at issue required litigation of disputes in Japan). That the forum selected by the contract is less convenient for the non-movant is not a valid basis upon which to object to the enforcement of contractual terms, even when the inconvenienced party is a consumer. See, e.g., Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (7th Cir. 1996)(noting that a forum selection clause will be enforced unless to do so would be to effectively deprive the non-movant of its day in court). Accord, e.g., Chapman v. Norwegian Cruise Line Ltd., 2001 WL 910102 at *2 (N.D.Ill.)(enforcing forum selection provision in consumer contract despite non-movant's objection that "litigating in Florida would be too inconvenient as their doctors, witnesses, and expert witnesses reside in either Illinois or Las Vegas, Nevada"). If Plaintiff's action is not dismissed in favor of arbitration, it must be dismissed for failure to file in North Carolina as required by contract.

LendingTree would consent to the transfer of this action via 28 U.S.C.A. §1404(a) to the Western District of North Carolina *in lieu* of dismissal under Rule 12(b)(3). While, e.g., Abbot Laboratories suggests that dismissal of an action is the appropriate manner in which to enforce a forum selection clause in the Seventh Circuit, it is nevertheless also true that a transfer to the

Western District of North Carolina would serve "the convenience of parties and witnesses," and be "in the interest of justice[.]"

## VI. CONCLUSION

For all of the foregoing reasons, Defendant LendingTree, LLC respectfully requests that Plaintiff's Complaint be dismissed and that Plaintiff be directed that if he wishes to pursue the matter further, he must do so by submitting to arbitrating his individual claims against LendingTree. If Plaintiff's Complaint is not dismissed because of the arbitration requirement, LendingTree asks that the Complaint be dismissed for improper venue or transferred *in lieu* of dismissal to the Western District of North Carolina (which sits in Mecklenburg County). In either event, LendingTree seeks reimbursement of attorney's fees, per the prevailing party provisions of the TOU, expended to prosecute this Motion, which merely seeks to compel Miller to live up to the terms of his agreement.

Dated: June 23, 2008                                        Respectfully submitted,

                                                         **LENDING TREE, LLC,**
                                                         *Defendant*

                                                         By: /s/ David Z. Smith
                                                              One of Its Attorneys

Mark S. Melodia (admission *pro hac vice* pending)
Paul J. Bond (admission *pro hac vice* pending)
REED SMITH LLP
136 Main Street, Suite 250
Princeton, NJ 08543
(609) 987-0050
(609) 951-0824 fax

David Z. Smith (ARDC No. 6256687)
Marina C. Santini (ARDC No. 6290668)
REED SMITH LLP
10 S. Wacker Drive
Chicago, IL 60606
(312) 207-1000
(312) 207-6400 fax
dzsmith@reedsmith.com

CHILIB-2188025